UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
FORT WAYNE DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Cause No. 1:21-CR-09 |
| | ) | |
| JAMES WATSON | ) | |
| | ) | |
| Defendant. | ) | |

## OPINION AND ORDER

Defendant James Watson is serving a 41-month federal sentence for violating 18 U.S.C. §922(g)(1). Watson told officers at the time of his arrest that he had the firearm for personal protection because he had recently been shot. Watson now seeks compassionate release pursuant to 18 U.S.C. § 3582(c)(1)(A)(1) contending that the Bureau of Prisons cannot adequately treat the injuries he received when he was shot. Additionally, he asserts he has other medical conditions that make him more susceptible to COVID-19. Finally, he argues that he should be released to take care of his children who have been removed from their mother's care. (ECF No. 54). While briefing was underway, Watson filed various supplements and requests of the Court (ECF Nos. 60, 63, 64, and 65).[1] The original motion is briefed (ECF Nos. 56, 61) and ripe for consideration.

---

[1] In his last filing, Watson requested an expedited ruling on his request for release because he was notified of a Court hearing regarding his children and he was set for release on August 15, 2023. To clarify, Watson has an anticipated RRC date of August 15, 2023. Still, Watson should understand that each time he files a supplement or additional information with the Court, it extends the Court's consideration of the motion because the Court must await a response from the Government. The Government did not file any responses to ECF Nos. 60, 63, 64, and 65, but the Court must still provide them adequate time to do so. As for his children's court hearings, the Defendant has options; he can request a continuance of the hearing given his incarcerated status, or request to participate by video conference or telephone. Technology and the COVID-19 pandemic have enabled participation by inmates in many proceedings without their personal presence.

Because the Defendant has not shown extraordinary and compelling reasons to justify his request for early release, the motion will be DENIED.

## DISCUSSION

Defendant's motion requests compassionate release. Generally, a court is statutorily prohibited from modifying a term of imprisonment once imposed. *See* 18 U.S.C. § 3582(c). A handful of statutory exceptions exist, however, one of which allows a court to grant an inmate compassionate release if the inmate meets certain requirements. *See* 18 U.S.C. § 3582(c)(1)(A). Under this provision, a court may not modify a term of imprisonment except that –

> (1) in any case --
>
> (A) the court, upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier . . . after considering the factors set forth in section 3553(a) to the extent that they are applicable, . . . finds that—
>
> (i) extraordinary and compelling reasons warrant such a reduction …
>
> … and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission[.]

18 U.S.C. § 3582(c)(1)(A)(i).

Because Defendant, not the Director of the BOP, filed the motion, Defendant must first show that he has satisfied the statutory exhaustion requirement. Watson did provide ECF No. 54-1 which is a Request for Administrative Remedy he submitted to the BOP on April 19, 2022.[2] The request sought compassionate release because of "multiple illnesses that fit the CDC guidelines." The request references "attached sheets" but those have not been provided by Watson so neither the Government nor the Court are aware of the medical issues he presented to the BOP as part of

---

[2] Prior to formally requesting compassionate release, Watson appears to have made an informal resolution request and listed pulmonary embolism as one of the medical conditions.

his request for compassionate release. *See United States v. Williams*, 987 F.3d 700, 703 (7th Cir. 2021) (an inmate must present the same or similar ground for compassionate release in a request to the BOP as in a motion to the Court). Nonetheless, the Warden denied the request on May 6, 2022, and provided instructions on how to appeal the denial. Whether he pursued an appeal is unknown, *see United States v. Sanford*, 986 F.3d 779, 780-81 (7th Cir. 2021) ("the defendant must first present his request for compassionate release to the warden *and exhaust administrative appeals* (if the request is denied)…"); but the Government, while noting the possibility that he did so, continues on to argue the merits of his request for compassionate release. The Court will do the same.

Congress did not define "extraordinary and compelling reasons" in the statute, instead delegating the matter to the Sentencing Commission to promulgate a policy statement that "describe[s] what should be considered extraordinary and compelling reasons for sentence reduction, including the criteria to be applied and a list of specific examples." 28 U.S.C. § 994(t). The policy statement, in United States Sentencing Guidelines ("U.S.S.G.") § 1B1.13 and the accompanying Application Notes, have not yet been amended to reflect the First Step Act's change to § 3582(c)(1)(A) allowing prisoners to bring compassionate release claims directly. *United States v. Gunn*, 980 F.3d 1178, 1180 (7th Cir. 2020)[3]. As a result, "§ 1B1.13 and its application notes provide useful – but not binding – guidance to courts in determining whether a defendant has identified an extraordinary and compelling reason for compassionate release." *United States v. Hoskins*, No. 2:99 CR 117, 2020 WL 7640408, at *2 (N.D. Ind. Dec. 23, 2020) (citing *Gunn*, 938

---

[3] Yet as *Gunn* made clear, the Guidelines' requirement that the court consider whether the reduction is otherwise "consistent with this policy statement" does not limit a district judge's discretion. This is because the statute by which the district court is bound requires a reduction to track "applicable policy statements." And the Sentencing Commission has not yet issued a policy statement "applicable" to Defendant's request. Thus, *Gunn* held, "[a]ny decision is 'consistent with' a nonexistent policy statement." *Gunn*, 980 F.3d at 1180

F.3d at 1180). Indeed, "[d]istrict judges must operate under the statutory criteria–'extraordinary and compelling reasons'–subject to deferential appellate review." *Gunn,* 980 F.3d at 1181.[4]

Using the guidance of §1B1.13 to inform the statutory criteria, the court considers the medical condition of the defendant, his age, his family circumstances, and whether there is in the defendant's case an extraordinary or compelling reason "other than or in combination with" the other reasons described in the Application Notes. Second, the Court determines whether the defendant is "a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g)." U.S.S.G. § 1B1.13(2). Finally, the Court considers the § 3553(a) factors, "to the extent they are applicable." U.S.S.G. § 1B1.13.

Defendant believes he has medical conditions – asthma, pulmonary embolism, mood disorders, and obesity – that place him at a greater risk for COVID-19. Courts in this Circuit were once forced to go through an extended analysis when COVID-19 was raised as the extraordinary and compelling reason. That analysis is no longer necessary. Almost two years ago, the Seventh Circuit all but eliminated COVID-19 as a basis for compassionate release under 18 U.S.C. § 3582(c)(1)(A). In *United States v. Broadfield*, 5 F.4th 801 (7th Cir. 2021), the court stated:

> Section 3582(c)(1)(A) was enacted and amended before the SARS-CoV-2 pandemic, and it will continue to serve a beneficent function long after the pandemic ends. But for the many prisoners who seek release based on the special risks created by COVID-19 for people living in close quarters, vaccines offer relief far more effective than a judicial order. A prisoner who can show that he is unable to receive or benefit from a vaccine still may turn to this statute, but, for the vast majority of prisoners, the availability of a vaccine makes it impossible to conclude that the risk of COVID-19 is an "extraordinary and compelling" reason for immediate release.

---

[4] At the time of this Opinion and Order, the Sentencing Commission has proposed amendments to §1B1.13 which have been circulated for public comment. However, until enacted and formally adopted by the Commission, those proposed amendments do not alter the Court's current analysis. For a reader-friendly version of the proposed amendments, see https://www.ussc.gov/guidelines/amendments, Proposed 2023 Amendments to the Federal Sentencing Guidelines.

*Id*.

Watson's medical records show that the BOP is monitoring all his current health conditions and providing adequate treatment through medications. Despite initially refusing the COVID-19 vaccine, Watson has now received two doses of the Moderna vaccine. Yet Defendant has declined the booster vaccines two times and declined influenza vaccinations. The availability of the vaccine and the steps taken by the BOP to monitor and treat his ailments eliminates his argument that COVID-19 is an extraordinary and compelling reason for release.

Watson also asserts that the BOP is providing inadequate care for his pain and mobility issues caused by his gunshot wounds. Prior to beginning his time at the BOP, Watson was shot five times and had surgery on his right arm. As part of his filings, Watson submitted a letter from Dr. Hicks at Fort Wayne Orthopedics finding that Watson needs surgery on his left arm. Nothing, however, indicates that this surgery is emergent.

Even so, the BOP has continuously treated Watson's pain and mobility issues, albeit not the way he would like. The BOP has made environmental modifications, such as placing him on a lower bunk and altering his work assignments, ordered and completed diagnostic tests, including x-rays and CT scans, prescribed various medications for pain, and referred Watson to a specialist, including two consultations with Precision Orthopedics on 5/12/2022 and 2/16/2023. After the second consult, Watson's records reflect that he visited Health Services at the institution and stated, "no matter what he wasn't having this doctor perform any surgeries on him." (ECF No. 58 at p. 57). On another occasion, Watson made a request to inmate health services asking to "get off my hold that [I'm] on and jus[t] be placed on medication until I leave[.] I do not want surgery here…" (ECF No. 58 at p. 58). What these comments demonstrate is that although the BOP has provided many forms of treatment for Watson, he remains unsatisfied and believes that he should

be released to have Dr. Hicks perform his surgery. But an inmate has no right to dictate the medical care he receives or to be provided with his own choice of treatment. It is enough that the BOP is providing adequate medical care. *Holloway v. Delaware Cty. Sheriff*, 700 F.3d 1063, 1073 (7th Cir. 2012) (holding that because a correctional institution must provide "adequate medical care," not "unqualified access to healthcare," inmates are not entitled to receive the treatment of their choice on demand). Thus, his gun shot injuries are not an extraordinary and compelling reason for his release.

Lastly, Watson asserts that he needs to be released to care for his minor children as they have recently been removed from their mother's care and CHINS proceedings have begun. See Allen Superior Court docket 02D08-2303-JC-000101. Watson raised this ground for relief in one of his supplements filed after the Government responded to Watson's original motion. (ECF No. 64). That said, a review of the court filings provided by Watson, shows that on April 3, 2023, his children have been ordered to reside with relative Stephanie Lang. That order also granted the Defendant temporary supervised visitation. Thus, aside from his failure to raise this issue in a request to compassionate release to the Warden, the children are being adequately cared for by a relative and under the supervision of the court. Thus, while the Court finds commendable his desire to care for his children, this is not an extraordinary and compelling reason for release.

In sum, because Watson has asserted no grounds that are extraordinary and compelling to warrant release, his request for compassionate release is denied.[5]

## **CONCLUSION**

---

[5] Because the Court does not find extraordinary and compelling reasons supporting release, it need not address the § 3553(a) factors. *See Thacker*, 4 F.4th at 576 (consideration of the § 3553(a) factors is required only "upon a finding that the prisoner has supplied such a [extraordinary and compelling] reason").

For the above reasons, the Defendant's Motion for Compassionate Release under 18 U.S.C.

§3582(c)(1)(A) is DENIED. (ECF No. 54).

SO ORDERED on July 18, 2023.

         s/ *Holly A. Brady*
         JUDGE HOLLY A. BRADY
         UNITED STATES DISTRICT COURT